UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| A.B., | CASE NO. 3:22-cv-05939-DGE |
| Plaintiff, | ORDER ON MOTIONS TO DISMISS (DKT. NOS. 40, 41) |
| v. | |
| EXTENDED STAY AMERICA Inc. et al., | |
| Defendants. | |

## I       INTRODUCTION

This matter comes before the Court on Defendant Extended Stay America, Inc.'s ("ESA, Inc.") and Defendant ESA P Portfolio Operating Lessee LLC's ("ESA Portfolio") motions to dismiss for lack of personal jurisdiction (Dkt. No. 41) and for failure to state claim (Dkt. No. 40). For the reasons discussed herein, the Court GRANTS both motions.

1

2

## II   BACKGROUND

### A.  Factual Background[1]

This matter involves the sexual trafficking of Plaintiff A.B.[2] at the Extended Stay America – Portland – Vancouver ("Hotel") between September 2012 and March 2013.  Plaintiff met her trafficker when she was a young adult.  (Dkt. No. 39 at 3.)  Plaintiff was coerced to have sex with at least seven clients at the Hotel and "was subject to repeated instances of rape, physical abuse, verbal abuse, exploitation, psychological torment, and false imprisonment" during the period in which she was trafficked at the Hotel.  (*Id.* at 33.)  Plaintiff's trafficker would rent a single room with two beds from the Hotel and requested two room keys.  (*Id.* at 34.) The trafficker would then provide Plaintiff with a room key outside of the sight of hotel staff and Plaintiff would enter the room as an unregistered guest.  (*Id.*)  Plaintiff's "buyers" would also visit her hotel room as unregistered guests.  (*Id.*)  Plaintiff's trafficker allegedly recorded her while she had sex with various "buyers" and used these recordings to blackmail her into further sex.  (*Id.* at 33.)  During her time at the Hotel, Plaintiff was directed to avoid interacting with hotel staff, who allegedly did not provide Plaintiff with any help or attention.  (*Id.* at 34.)

### B.  Procedural Background

Plaintiff first filed suit in the United States District Court for the District of Oregon in December 2019.[3]  (Dkt. No. 9 at 3.)  Plaintiff's first complaint was brought against each of the

---

[1] The Court takes Plaintiff's well-pleaded factual allegations as true for purposes of this motion.

[2] Because the Court is granting Defendants' motions to dismiss, the Court does not rule on Plaintiff's request to proceed pseudonymously pursuant to Federal Rule of Civil Procedure 26(c). (*See* Dkt. No. 39 at 4.)

[3] The Court has "discretion to take judicial notice of documents 'not subject to reasonable dispute.'" *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) (quoting Fed. R. Evid. 201(f)). The Court finds Plaintiff's prior court filings as presented by Defendants (Dkt. No. 9) are not subject to reasonable dispute and the Court takes judicial notice of these documents.

1  parent companies of the hotels where Plaintiff was allegedly trafficked by her trafficker,

2  including ESA, Inc.  (*See* Dkt. No. 9 at 7–16.)  The Oregon District Court ultimately dismissed

3  ESA, Inc. and another defendant for lack of personal jurisdiction.  *See A.B. v. Hilton Worldwide*

4  *Holdings Inc.*, 484 F. Supp. 3d 921, 934 (D. Or. 2020) ("A.B. I").  The court also dismissed

5  Plaintiff's Trafficking Victims Protection Reauthorization Act ("TVPRA") claims against the

6  other defendants for failure to state a claim.  *Id.* at 939.  Plaintiff was granted leave to amend her

7  complaint to restate her TVPRA claims against the defendants over which the Oregon District

8  Court properly had jurisdiction.  *Id.* at 945.  Plaintiff subsequently amended her complaint

9  against the remaining Oregon defendants.  (*See* Dkt. No. 9 at 108.)  Despite Plaintiff's

10  amendments to her complaint, the Oregon District Court found that Plaintiff failed to adequately

11  state a TVPRA claim as against any of the other hotel brands used by her trafficker.  *A.B. v.*

12  *Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1030 (D. Or. 2021) ("A.B. II").

13        On December 1, 2022, Plaintiff filed a new complaint in this Court as against ESA, Inc.,

14  ESA Portfolio, and Sammy Corporation ("Sammy Corp.")  (*See generally* Dkt. No. 1.)

15  Plaintiff's new complaint alleged many of the same underlying facts as her Oregon complaints.

16  (*Id.*)  ESA, Inc. and ESA Portfolio then filed motions to dismiss Plaintiff's complaint for failure

17  to state a claim and for lack of personal jurisdiction.  (*See* Dkt. Nos. 8, 11.)  Plaintiff then

18  improperly filed an amended complaint without seeking leave of court.  (Dkt. No. 27.)  The

19  Court struck Plaintiff's amended complaint and ordered Plaintiff to file a motion for leave to

20  amend her complaint.  (Dkt. No. 28.)  Plaintiff filed an unopposed motion for leave to amend her

21  complaint and dismissing Sammy Corp. (Dkt. No. 33), which the Court granted (Dkt. No. 38).

22  On June 9, 2023, Plaintiff filed her amended complaint.  (Dkt. No. 39.)  Plaintiff's amended

23  complaint alleges that ESA, Inc. and ESA Portfolio financially benefited from Plaintiff's sex

24

1    trafficking and brings a TVPRA beneficiary claim pursuant to 18 U.S.C. § 1595.  (*Id.* at 38–39.)

2    On June 22, 2023, ESA, Inc. and ESA Portfolio filed renewed motions to dismiss Plaintiff's

3    claims against them for lack of personal jurisdiction and for failure to state a claim. (*See* Dkt.

4    Nos. 40, 41.)

## III    DISCUSSION

### A.  Personal Jurisdiction

#### a.  Legal Standard

ESA, Inc. moves to dismiss Plaintiff's claims against them pursuant to Federal Rule of
Civil Procedure 12(b)(2).  (Dkt. No. 41.)

On a Rule 12(b)(2) motion, the plaintiff bears the burden of proving the Court may
properly exercise personal jurisdiction over a defendant.  *Ranza v. Nike, Inc.*, 793 F.3d 1059,
1068 (9th Cir. 2015).  "When the [d]efendant's motion is based on written materials rather than
an evidentiary hearing," the plaintiff need only make a prima facie showing of jurisdiction.  *See*
*Will Co. v. Lee*, 47 F.4th 917, 921 (9th Cir. 2022).  The Court must take undisputed allegations in
the complaint as true, but will not assume the truth of allegations controverted by affidavit.  *See*
*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

"Where, as here, no federal statute authorizes personal jurisdiction, the district court
applies the law of the state in which the court sits."  *Id.*  Washington's "long-arm statute is
coextensive with federal due process law," *Pruczinski v. Ashby*, 374 P.3d 102, 106 (Wash.
2016), and so "the jurisdictional analysis under state law and federal due process are the same."
*Microsoft Corp. v. Commc'ns & Data Sys. Consultants, Inc.*, 127 F. Supp. 3d 1107, 1113 (W.D.
Wash. 2015).

1    There are two types of personal jurisdiction—general or specific jurisdiction.  *See id.*

2  ESA, Inc. argues the Court lacks both general and specific jurisdiction over it.  (Dkt. No. 41 at

3  5–6.)

4                  b.  General Jurisdiction

5    The Court lacks general jurisdiction over ESA, Inc.

6    A court has general jurisdiction over a company where the company's affiliations in the

7  forum state are "so continuous and systematic as to render the foreign corporation essentially at

8  home in the forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11 (2014) (cleaned up).

9  "The paradigmatic locations where general jurisdiction is appropriate over a corporation are its

10  place of incorporation and its principal place of business."  *Ranza*, 793 F.3d at 1069.  Courts

11  may, in exceptional circumstances, find that a company's contacts with the forum state are so

12  systematic and continuous that the company is essentially at home in the forum.  *Martinez v.*

13  *Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014).

14    ESA, Inc. was headquartered in Delaware and maintained its principal place of business

15  in North Carolina prior to its merger with ESH Hospitality in June 2021.[4]  (Dkt. No. 12 at 3.)

16

17  ───────────────

[4] Plaintiff initially argues that the Court is confined to the facts as alleged in the complaint when

18  reviewing a motion to dismiss for lack of personal jurisdiction.  (Dkt. No. 43 at 5.)  However,
Plaintiff subsequently acknowledges that the Court may consider ESA, Inc.'s affidavits on a

19  motion to dismiss for lack of jurisdiction but argues that any disputes between the complaint and
Defendant's affidavits create a genuine dispute of material fact inappropriate for resolution at this

20  stage in the litigation.  (*Id.* at 10.)  Plaintiff misunderstands the legal standard and her burden here.
"When adjudicating a motion to dismiss brought pursuant to Federal Rule of Civil Procedure

21  12(b)(2), a court may consider extrinsic evidence—that is, materials outside of the pleadings,
including affidavits submitted by the parties."  *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F.

22  Supp. 3d 938, 951 (N.D. Cal. 2015).  And, as noted, the Court may not assume allegations in the
complaint that are controverted by affidavit are true for purposes of a Rule 12(b)(2) motion.  *See*

23  *Carpenter v. Sikorsky Aircraft Corp.*, 101 F. Supp. 3d 911, 922 (C.D. Cal. 2015).  "When a
defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is 'obligated to come
forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'"  *Scott v. Breeland*,

24  792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Marketing Systems, Inc. v. Jobar International,*

Therefore, the Court may exert general jurisdiction over ESA, Inc. only if its "operations in a forum other than its formal place of incorporation or principal place of business [] [are] so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19.

Plaintiff conflates specific and general jurisdiction in her response brief, but appears to argue that ESA, Inc.'s contacts with Washington constitute an exceptional case under *Daimler*. (*See* Dkt. No. 43 at 11.) ESA, Inc., in response, argues that Plaintiff has only put forward conclusory allegations about their contacts with Washington and has failed to establish that ESA, Inc. was at home in the state. (*See* Dkt. No. 45 at 5–6.)

The Court agrees with ESA, Inc. that Plaintiff has failed to establish that this case is the exceptional case envisioned by *Daimler*. Plaintiff alleges

> Defendants have submitted to the jurisdiction of Washington and have purposefully availed themselves of the privilege of conducting acts in Washington through their dominion and control over their respective brands with brand subsidiaries, brand property subsidiaries, and operating hotels, and day-to-day operation of the hotels, and thus, invoking the benefits and protections of the laws in Washington.

(Dkt. No. 39 at 13.) Plaintiff further alleges that ESA, Inc. and ESA Portfolio are "a single and joint employer with a high degree of interrelated, intermingled, and unified operations" (*see id.* at 8) and that ESA, Inc. exerts substantial control over the day to day operations of ESA Portfolio and its other branded properties. ESA, Inc., by contrast, submits a signed affidavit from William E. Hashe, former Vice President of Tax for ESA, Inc., asserting that "[a]ll corporate formalities between Extended Stay America, Inc. and its subsidiaries were followed" and that ESA, Inc. "did not and does not supervise, direct or manage hotels in Washington and/or

---

*Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). A plaintiff may not simply rest on the facts as alleged in their complaint when the moving party presents evidence indicating the Court lacks jurisdiction.

control the means and methods of how any Washington hotels conduct daily business." (Dkt. No. 12 at 3–4.) Mr. Hashe's affidavit further provides that ESA, Inc. "did not and does not maintain offices" in Washington and that it "never owned, operated or managed the Extended Stay America hotel" at issue in this case. (*Id.* at 4.) Plaintiff does not submit an affidavit to rebut ESA, Inc.'s assertions.

Based on the uncontested facts in ESA, Inc.'s affidavit, the Court cannot find it has general jurisdiction here. This is not an exceptional case where ESA, Inc. can be considered at home in Washington. The general jurisdiction analysis looks at a company's operations in their entirety to determine where they may be considered at home. *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414 (2017). Even were the Court to credit Plaintiff's allegation that ESA, Inc. asserts substantial control over the day-to-day operations of its branded properties, "a corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* (cleaned up).

c. Specific Jurisdiction

ESA, Inc. also asserts the Court lacks specific jurisdiction over it because Plaintiff has failed to establish that ESA, Inc. purposefully directed actions at Washington and that Plaintiff's claims arise out ESA, Inc.'s alleged forum-related activities. (Dkt. Nos. 41 at 6; 45 at 6–8.)

A defendant must have "minimum contacts" with the forum state for a court to have specific jurisdiction over them. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). The Ninth Circuit has articulated a three-part test to determine whether a court may properly exert specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* at 802. (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).[5]

The Ninth Circuit uses the "effects" test to determine whether a non-resident defendant has purposefully directed their activities toward the forum state. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011). For a defendant to have purposefully directed their activities at the forum state, they "must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)). As the Supreme Court has further clarified, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014)

ESA, Inc. argues they could not have formed any intent to commit an intentional act because "the conduct in Washington which gave rise to Plaintiff's allegation concluded in March 2013, months prior to the formation of ESA, Inc." (Dkt. No. 45 at 7; *see also* Dkt. No. 41 at 6.) Nor could they have expressly aimed their conduct at the forum state under a similar argument. In response, Plaintiff argues that the Court could exert jurisdiction over ESA, Inc. on a theory of

---

[5] The Ninth Circuit uses two slightly different tests to assess whether the first prong is satisfied. *See Schwarzenegger*, 374 F.3d at 802. A party may either "purposefully direct" their activities toward the forum or "purposefully avail" themselves of the privilege of doing business in the forum. *Id.* Purposeful direction applies to tort-based claims. *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020). Because Plaintiff's TVPRA claim sounds in tort, *see A.B. I*, 484 F. Supp. 3d at 933, the Court applies the purposeful direction analysis here.

1  successor liability and that the Court should grant jurisdictional discovery.  (Dkt. No. 43 at 14–

2  16.)

3          Jurisdictional "[d]iscovery may be appropriately granted where pertinent facts bearing on

4  the question of jurisdiction are controverted or where a more satisfactory showing of the facts is

5  necessary."  *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (quoting *Data Disc, Inc.*

6  *v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir.1977)).  Discovery is not

7  appropriate where it is "based on little more than a hunch that it might yield jurisdictionally

8  relevant facts[.]"  *Boschetto*, 539 F.3d at 1020.  Plaintiff relies on Washington case law regarding

9  successor liability, but such case law clearly states a court may only use successor liability as a

10 basis for personal jurisdiction where "a successor has assumed its predecessor's liabilities[.]"

11 *Harbison v. Garden Valley Outfitters, Inc.*, 849 P.2d 669, 674 (Wash. Ct. App. 1993).  Here,

12 ESA, Inc. has submitted an affidavit stating that "[w]hen Extended Stay America, Inc. was

13 formed under the laws of the State of Delaware on July 8, 2013, it never purchased any liabilities

14 or assets . . . . Such liabilities and assets always remained with the owner, ESA P Portfolio LLC,"

15 ESA Portfolio, and associated management companies.  (Dkt. No. 46 at 4–5.)  ESA, Inc. has also

16 asserted via affidavit that it maintained all corporate formalities between itself and its

17 subsidiaries.[6]  (*See* Dkt. No. 12 at 3–4.)  Plaintiff does not submit any affidavits or other

18 evidence to the contrary for the Court to consider, nor does Plaintiff's continuity of brand

19

20

21 [6] "It is a general principle of corporate law deeply 'ingrained in our economic and legal systems'

22 that a parent corporation (so-called because of control through ownership of another corporation's
   stock) is not [typically] liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S.

23 51, 61 (1998).  Though Plaintiff appears to make an argument that ESA, Inc. pierced the corporate
   veil, she does not put forward any evidence to this effect and the Court may credit ESA, Inc.'s

24 attestations to the contrary.

argument (*see* Dkt. No. 43 at 13–14) persuade the Court that Plaintiff's assertion that ESA, Inc.

assumed the liabilities of its predecessors is based on anything more than a hunch.

Given that ESA, Inc. has put forward credible evidence that it did not exist until after

Plaintiff suffered the injuries at issue in this suit and that Plaintiff has not put forward evidence

that convinces the Court her jurisdictional theories are based on more than just a hunch, the

Court DENIES Plaintiff's request for jurisdictional discovery and GRANTS ESA, Inc.'s motion

to dismiss for lack of personal jurisdiction.  ESA, Inc. could not have purposefully directed any

activities at the forum state that give rise to Plaintiff's claims because it did not exist until after

Plaintiff's alleged trafficking.

**B.  Failure to State a Claim**

a.  <u>Legal Standard</u>

ESA Portfolio moves to dismiss Plaintiff's complaint, alleging Plaintiff has failed to state

a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[7]  (Dkt. No. 40.)

"When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the

Court assumes that all the allegations in the complaint are true."  *Nw. Env't Advocs. v. United*

*States Env't Prot. Agency*, No. C14-196 RSM, 2015 WL 13938171, at *4 (W.D. Wash. July 2,

2015).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While the

Court must accept non-conclusory factual allegations as true, the Court does not have to accept

conclusory, legal assertions.  *Id.*

---

[7] Because the Court lacks personal jurisdiction over ESA, Inc., the Court only considers the Defendants' motion to dismiss for failure to state a claim as to ESA Portfolio.

1

   b.  TVPRA

2      ESA Portfolio argues Plaintiff has failed to sufficiently plead a TVPRA beneficiary claim

3  against it.  (Dkt. No. 40 at 13.)  The Court agrees.

4      The TVPRA provides that

5      An individual who is a victim of a violation of this chapter may bring a civil action
       against the perpetrator (or whoever knowingly benefits, or attempts or conspires to
6      benefit, financially or by receiving anything of value from participation in a venture
       which that person knew or should have known has engaged in an act in violation of
7      this chapter) in an appropriate district court of the United States and may recover
       damages and reasonable attorneys fees.
8
   18 U.S.C. § 1595(a).
9
       To prevail on a theory of beneficiary liability under the TVPRA, a plaintiff must allege
10
   that the defendant "(1) knowingly benefitted, (2) from participation in a venture [], (3) which
11
   they knew or should have known was engaged in conduct that violated the TVPRA."  *Ratha v.*
12
   *Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022).  Where a party fails to adequately
13
   plead one of these elements, the Court need not consider the rest.  *See id.*
14
       Here, Plaintiff has failed to adequately allege that ESA Portfolio knew or should have
15
   known that Plaintiff was being trafficked.  The Ninth Circuit in *Phatthana* assumed without
16
   deciding that "knew or should have known" imposes, at minimum, a negligence standard on
17
   beneficiaries of trafficking under the TVPRA.  *See id.* at 1177.  Other courts that have
18
   interpreted the knew or should have known language of § 1595(a) have found similarly.  *See,*
19
   *e.g.*, *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021) (noting that
20
   "[c]onstructive knowledge . . . is that knowledge which 'one using reasonable care or diligence
21
   should have'"); *see also M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 965
22
   (S.D. Ohio 2019) (finding that "the words 'should have known,' . . . invokes a negligence
23
   standard").  Even assuming that a negligence standard applies, a plaintiff may not rely solely on
24

general allegations that a defendant was aware of sex trafficking to establish actual or constructive knowledge of specific instances of sex trafficking.  *See Phatthana*, 35 F.4th at, 1177 (noting that reports and articles about human trafficking in the Thai shrimp fishing industry were "too attenuated to support an inference" that the defendant knew or should have known about human trafficking at a specific shrimp factory).  Rather, a plaintiff must plead facts establishing that a defendant knew or should have known that the plaintiff was being trafficked or regarding a specific trafficking enterprise.  *See S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) ("The real issue is not, then, actual-versus-constructive knowledge but whether a defendant satisfies the knowledge element as to a *particular* sex trafficking venture.").

The facts, as alleged, do not establish that ESA Portfolio was negligent as regards Plaintiff's sex trafficking.  The TVPRA defines sex trafficking "as commercial sex activity either involving a minor or where 'force, threats of force, fraud, coercion . . . or any combination of such means [is] used to cause [a] person to engage in a commercial sex act.'"  *A.B. II*, 532 F. Supp. 3d at 1024 (alterations in original) (quoting 18 U.S.C. § 1595(a)).  The statute "does not address commercial sex activity generally."  *Doe 1 v. Red Roof Inns, Inc.*, No. 1:19-CV-03840-WMR, 2020 WL 1872335, at *3 (N.D. Ga. Apr. 13, 2020).  Here, there are no non-conclusory allegations of coercion or force such that hotel staff, or by extension ESA Portfolio, should have known that Plaintiff was being trafficked.

Plaintiff alleges that her trafficker would check into the hotel "by himself" and "would request one room with two beds and two room keys."  (Dkt. No. 39 at 34.)  Plaintiff did not check in to the hotel with her trafficker.  She was given a hotel key outside in her trafficker's car and "would then walk by herself through the lobby as an unregistered guest and into the room without making eye contact."  (*Id.*)  Plaintiff was "required to avoid eye contact with hotel staff

1    and did not speak to anyone." (*Id.*)  She also wore weather inappropriate clothing.  (*Id.*)

2    Plaintiff's "buyers" would enter the lobby of the hotel and head to her room.  (*Id.*)  After each

3    encounter, Plaintiff's trafficker would come to her room to collect the money paid to her.  (*Id.*)

4    Plaintiff further alleges there were "obvious signs of human trafficking (no eye contact,

5    inappropriate attire, suspicious check-in behavior, and duration of stay) and indicators of

6    commercial sex activity [][such as] bottles of lubricants, boxes of condoms, used condoms in the

7    trash, excessive requests for towels and linens[.]" (*Id.* at 35.)

8          Plaintiff's allegations are most similar to those where courts have found no TVPRA

9    liability.  First, the Court takes note that the Oregon District Court explicitly rejected Plaintiff's

10   TVPRA claim as against other hotel brands based on a similar set of facts involving her same

11   trafficker.  As Judge Immergut discussed in that case, Plaintiff

12          does not contend that hotel staff observed her trafficker forcefully bring her to a
             hotel, attack her, or restrain her. . . . The Amended Complaint generally states that
13          her trafficker would book the room, and then Plaintiff would walk to the hotel room
             by herself.  Nor does Plaintiff allege a member of hotel staff had a personal
14          relationship with her trafficker. . . . She merely alleges that she repeatedly
             "encountered" the same hotel staff who paid no attention to her.  Moreover, Plaintiff
15          does not allege she had prominent bruises, brandings, or other visible injuries.

16   *A.B. II*, 532 F. Supp. 3d at 1029 (internal citations omitted).  Here too, Plaintiff's complaint lacks

17   sufficient allegations of force or coercion.  Based on Plaintiff's complaint, there is no indication

18   of force or coercion such that hotel staff should have known that Plaintiff was being trafficked.

19   Conclusory statements that certain things are "obvious signs of sex trafficking" do not satisfy the

20   pleading standard here.  Plaintiff must plead that ESA Portfolio "knew or should have known

21   that Plaintiff was engaged in commercial sex activity on their property due to 'force, threats of

22   force, fraud, coercion . . . or any combination of such means.'"  *Id.* at 1028 (quoting 18 U.S.C §

23   1591(a)).

24

1      Other courts based on similar facts have found that allegations consistent with general

2  commercial sex activity, but not rising to the level of sex trafficking, do not give rise to a

3  TVPRA claim.  *See, e.g.*, *Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-CV-00619-PAB-SKC,

4  2021 WL 5579117, at *8 (D. Colo. Nov. 30, 2021) (finding failure to state TVPRA claim where

5  Plaintiff failed to allege she exhibited signs indicative of sex trafficking and failed to alert hotel

6  staff of her trafficking).  In cases where courts found a plaintiff to have adequately stated a

7  TVPRA beneficiary claim as against a hotel, the plaintiff typically alleges that they exhibited

8  some external indicator of physical distress that would have been obvious to hotel staff had they

9  not been negligent or that traffickers previously trafficked victims at the same hotel.  *See, e.g.*,

10  *A.W. v. Red Roof Inns, Inc.*, No. 2:21-CV-04934, 2022 WL 17741050, at *7 (S.D. Ohio Dec. 16,

11  2022) (finding TVPRA claim adequately pled where plaintiff alleged "signs of physical abuse

12  and weight loss"); *T.P. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-CV-04933, 2022 WL

13  17363234, at *8 (S.D. Ohio Dec. 1, 2022) (finding TVPRA claim adequately pled where plaintiff

14  exhibited "signs of physical abuse" and "her trafficker openly beat her in the parking lot of the

15  hotel"); *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228, 1239 (N.D. Ga. 2022) (finding

16  TVPRA claim adequately pled where plaintiff was a minor who had numerous adult men visit

17  her room, exhibited clear signs of external distress, and where "sex traffickers had previously

18  trafficked victims at the" hotel); *S. Y. v. Wyndham Hotels & Resorts, Inc.*, 519 F. Supp. 3d 1069,

19  1083 (M.D. Fla. 2021) (finding TVPRA claim adequately pled where "Plaintiff displayed clear

20  signs of physical abuse, diminished personal hygiene, submissiveness and inappropriate attire").

21      Here, however, nothing Plaintiff has pled is inconsistent with voluntary commercial sex

22  activity and there are no indications that ESA Portfolio should have been aware that Plaintiff was

23  being trafficked.  Plaintiff argues that the combination of her factual allegations about herself

24

1 | and allegations that her trafficker used the hotel's wireless internet to record her having sex to

2 | blackmail her into further interactions is sufficient to establish that ESA Portfolio should have

3 | known about her trafficking.  (Dkt. No. 39 at 33.)  The problem with such a theory is that it

4 | assumes that ESA Portfolio has an affirmative obligation to monitor their customers' data usage.

5 | Furthermore, it assumes that ESA Portfolio would be able to tell that excessive data usage was

6 | an indicator of sexual trafficking, a supposition for which Plaintiff provides no support.

7 | "A claim has facial plausibility when the plaintiff pleads factual content that allows the

8 | court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

9 | *Iqbal*, 556 U.S. at, 678.  Here, the reasonable inference presented by Plaintiff's complaint is that

10 | hotel staff, and by extension ESA Portfolio, knew or should have known that Plaintiff was

11 | engaged in commercial sex activity.  It is, however, unreasonable absent more facts to presume

12 | that ESA Portfolio knew or should have known that Plaintiff was being trafficked.  In other

13 | words, ESA Portfolio was not negligent and could not have determined that Plaintiff was being

14 | trafficked using reasonable care and diligence.

15 | Given that Plaintiff has failed to establish that ESA Portfolio knew or should have known

16 | that Plaintiff was being trafficked, the Court finds that Plaintiff has failed to state a claim as

17 | against ESA Portfolio and need not address the rest of her arguments.

18 | **C.  Leave to Amend**

19 | Plaintiff requests leave to amend her Complaint in the event Defendants' motion is

20 | granted.  (Dkt. No. 42 at 4, 24.)

21 | In evaluating whether to grant leave to amend, a court should consider "1) undue delay,

22 | bad faith, or dilatory motive on the part of the movant; 2) repeated failure to cure deficiencies by

23 | amendments previously allowed; 3) undue prejudice to the opposing party by virtue of allowance

24 |

ORDER ON MOTIONS TO DISMISS (DKT. NOS. 40, 41) - 15

1   of the amendment; and 4) futility of amendment." *Stanton v. Battelle Energy Alliance, LLC*, 83

2   F. Supp. 3d 937, 949 (D. Idaho 2015).

3          Here, Plaintiff offers no additional facts or insight as to the nature of the amendment(s)

4   she proposes that would cure the deficiencies identified in this Order.  Plaintiff also previously

5   was granted leave to amend her Complaint on June 5, 2023.  (Dkt. No. 38.)  This was after

6   Defendants filed motions to dismiss the original Complaint, which advanced the same arguments

7   asserted in the present motions (*see* Dkt. Nos. 8 and 11), and after nearly identical facts were

8   advanced in *A.B. I* and *A.B. II* in the District of Oregon.  It, therefore, appears that additional

9   amendments would be futile.  Moreover, while the Court does not believe there has been an

10  intent to engage in undue delay or bad faith, undue prejudice likely would result to Defendants if

11  additional amendments were allowed to occur considering the history of this litigation.

12         Based on the record presented, Plaintiff's request for leave to amend is DENIED.

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON MOTIONS TO DISMISS (DKT. NOS. 40, 41) - 16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## IV     CONCLUSION

Accordingly, and having considered the Defendants' motions (Dkt. Nos. 40, 41), the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that the Defendants' motions are GRANTED as follows:

1.   The Court GRANTS ESA, Inc.'s motion to dismiss for lack of personal jurisdiction and DISMISSES Plaintiff's claims against it.  The Court does not rule on ESA, Inc.'s motion to dismiss for failure to state a claim.

2.   The Court GRANTS ESA Portfolio's motion to dismiss for failure to state a claim and DISMISSES Plaintiff's claims against it with prejudice.

Dated this 13th day of September, 2023.



David G. Estudillo
United States District Judge

ORDER ON MOTIONS TO DISMISS (DKT. NOS. 40, 41) - 17